THE STATE EX REL. GEORGE W. KIRBY ET AL. v. FRANCIS H. TRIMBLE
ET AL., Judges of Kansas City Court of Appeals.—32 S. W. (2d)
569.

Division One, November 18, 1930.

*Gresham & Gresham* and *Eastin & McNeely* for relators.

*T. C. Sparks, James H. Hull* and *H. G. Leedy* for respondents.

678

GANTT, P. J.—This case came to me on reassignment. Relators seek to have quashed an opinion of the Kansas City Court of Appeals in Brady, Trustee, v. Kirby et al. The facts are therein stated as follows:

"This is a suit on a promissory note in the sum of $2500, dated Dearborn, Missouri, July 20, 1923, due six months after date, payable to the Bank of Dearborn and signed by the defendants as makers. The note bears the following indorsement upon the back thereof: 'Bank of Dearborn by John W. Tays, Cashier.'

"At the end of all the testimony the court refused defendants' instruction in the nature of a demurrer to the evidence, and gave plaintiff's instruction directing a verdict for him. A verdict was accordingly rendered in favor of plaintiff in the amount of the note, interest and attorney's fees. Defendants have appealed.

"The facts show that in 1918, the Dearborn Electric Light & Power Company, of which defendants were stockholders, borrowed $4500 from the Bank of Dearborn, giving its note for said amount, with the present defendants as sureties thereon; that on or about

July 20, 1923, there had been paid by these defendants on said indebtedness the sum of $2,000 and accrued interest; that on that day a new note (the note in suit) for $2500 was given the Bank of Dearborn, due six months after date, which note was signed by the defendants only.

"On December 20, 1922, the Bank of Dearborn (hereinafter called the Bank) borrowed from the Commerce Trust Company of Kansas City (hereinafter called the Trust Company) the sum of $37,000, pursuant to a resolution shown in the minutes of a meeting of the board of directors of the Bank held on December 16, 1922. This resolution did not mention anything about placing collateral with the Trust Company to secure the note, but did recite that the note to the Trust Company 'carry the individual indorsements of the board of directors' of the Bank of Dearborn. Accordingly a note in the sum of $37,000 was given by the Bank to the Trust Company indorsed by the directors of the Bank. However, Mr. Tays, cashier of the bank, in connection with this loan, delivered to the Trust Company certain collateral of the Bank to secure its note. There is no evidence of any authority given by the board of directors to Tays for the pledging of this or any other collateral. The Trust Company would permit the Bank to substitute other collateral for collateral the latter had with the former, and on August 17, 1923, Tays pledged to the Commerce Trust Company the note in suit, along with other notes totalling $11,670, to take the place of the notes the Trust Company then held as collateral. There is no evidence of any authority given by the board of directors of the Bank to Tays to pledge the note in suit to the Trust Company. The note to the Trust Company had been renewed from time to time and various credits had been given thereon. On September 29, 1923, the Bank owed the Trust Company, on this and other loans, the sum of $60,000. On the last mentioned date the Bank suspended and went into the hands of the Commissioner of Finance.

"On December 31, 1923, the sureties on the note given to the Trust Company by the Bank gave a new note to the Trust Company, signed by themselves alone as individuals, and not by the Bank. This note was in the sum of $38,931.49, the net balance then due from the Bank of Dearborn to the Trust Company on all loans. This last note was ultimately paid by the makers thereof on May 28, 1924, at which time the notes held by the Trust Company as collateral security, including the one in suit, were turned over to them by it. Thereafter these men who had signed the Bank's notes to the Trust Company as sureties, executed a written instrument authorizing the plaintiff, as trustee, to bring action upon the note in controversy and the other notes received from the Trust Company.

"Before bringing the present suit, plaintiff, as such trustee, instituted a proceeding against the Bank of Dearborn and Frank C. Millspaugh, State Finance Commissioner in charge of the Bank, in which a decree was entered subrogating plaintiff, as trustee, to all the rights and remedies of the Commerce Trust Company in and to the promissory note sued upon herein, as well as other collateral security which had been held by the Trust Company as aforesaid and granting him specific relief. A full description of that proceeding will hereinafter be made.

"The answer to the present suit consists of a general denial and plea of payment of the note. In connection with this plea it is alleged that defendants signed as sureties the original note for $4500 given by the Dearborn Electric Light & Power Company to the Bank, at which time the Light & Power Company was solvent; that at that time one W. H. Gabbert was cashier and director of the Bank and also a stockholder and member of the board of directors of the Light & Power Company and secretary of said company; that after the execution of said note in the sum of $4500 a corporation was organized known as the Dearborn Iron & Power Company; that Gabbert became a stockholder, director and officer of this corporation; that the Iron & Power Company purchased the property and assets of the Light & Power Company and as a part of the transaction delivered to the Bank forty-seven shares of the stock of the Iron & Power Company in payment of the $4500 note of the Light & Power Company to said bank; that the Bank accepted said shares of stock in full payment of the indebtedness and, the note having been paid, defendants were discharged as sureties thereon; that the transactions between the Light & Power Company and the Iron & Power Company and the issuance of the forty-seven shares of stock in the Bank in satisfaction of the note and the acceptance thereof by the Bank was handled and conducted by Gabbert in behalf of the Light & Power Company and the Bank of Dearborn; that thereafter the Bank accepted dividends upon the stock; that subsequent to these transactions the Bank, through its officers and agents, represented to the defendants that the indebtedness had not been paid and demanded payment from them; that relying upon such representations and without knowledge of the facts they paid the Bank the sum of $2,000 and interest and executed the note for $2500 sued upon herein; that the last mentioned note was thus procured by fraudulent representations of the Bank; that the directors of the Bank knew at the time the note was pledged to the Trust Company that it was not a subsisting and valid asset of the Bank and knew that it had been procured by such false representations; that the parties whom the plaintiff represents did not pay the indebtedness of the Bank to the Trust.

Company until after maturity of the note in suit and plaintiff is not entitled to be subrogated to the position occupied by the Trust Company as the holder of the note.

"To the answer plaintiff filed a reply consisting of a general denial."

In this case Brady, Trustee, pleaded the judgment in the case of Brady, Trustee, v. Bank of Dearborn and Commissioner of Finance, as tending to show he was legal holder of the note. The judgment was admitted in evidence for that purpose. Relators now contend that title was not an issue in that case, and for that reason the opinion is in conflict with certain decisions of this court. The opinion discloses no objection to the admission of the judgment in evidence for that reason. However, we think the question was an issue. But if not, the Commissioner of Finance had an opportunity to make it an issue, and this determines the question.

Relators contended the judgment was void for the reason the Commissioner of Finance answered individually and not as Commissioner. In ruling the question the Court of Appeals said:

"While it is true that in form the Bank and the Commissioner made separate answers and the decree recites that both of them were before the court by their attorneys, an examination of the answer of the Commissioner of Finance shows that in fact he was making the defense on behalf of the Bank. There is nothing in his answer remotely tending to show that he was making any other kind of a defense. Disregarding the form and looking only to the substance of the matter it is apparent that the Commissioner was defending the suit on behalf of the Bank and that the court rendered a judgment entirely in harmony with the answer of the Commissioner."

They contend this ruling is in conflict with Ivie v. Bailey, 319 Mo. 474, l. c. 482, 5 S. W. (2d) 50. In that case it was contended that depositors of a bank were without authority under the statute to sue directors of an insolvent bank to recover money deposited in the bank after the directors knew of its insolvency. It was further contended said authority was lodged by statute solely with the Commissioner of Finance. We ruled a depositor was authorized under the statute to sue the directors. The opinion in no way conflicts with this decision.

Relators also contended the judgment was void as to the Bank of Dearborn for the reason an insolvent bank is not *sui juris*, and therefore cannot waive summons and appear by attorney. The court in ruling the question said:

"We need not pass upon the question as to whether the Bank was capable of being a party to the proceedings or of taking the action that the record purports to show that it did take. The defect, if

any, in the parties defendant in that action could have been taken advantage of only by demurrer therein (State of Missouri to Use of Saline County v. Sappington, 68 Mo. 454; Bulkley v. Iron Co., 77 Mo. 105), and the judgment cannot be collaterally attacked on the grounds assigned. [34 C. J. 554, 559, 560.]''

Relators claim this ruling is in conflict with decisions of this court. The cases cited do not touch the question. Indeed, the questions just considered are presented as if here for review on appeal.

Relators also contended the judgment was not admissible for the reason they were not parties to the proceeding and therefore not bound by the judgment. An objection for that reason was overruled. They contend this ruling is in conflict with decisions of this court holding that strangers to a suit are not bound by the judgment, and cite cases as follows: Quigley v. Mexico Southern Bank, 80 Mo. l. c. 296; Crispen v. Hannavan, 50 Mo. l. c. 419; Cravens v. Jameson, 59 Mo. 68; Henry v. Woods, 77 Mo. l. c. 280, 281; Russell v. Grant, 122 Mo. l. c. 180, 26 S. W. 958; State ex rel. v. Johnson, 123 Mo. l. c. 54, 27 S. W. 399; State ex rel. v. St. Louis, 145 Mo. l. c. 567, 46 S. W. 981; Overshiner v. Britton, 169 Mo. l. c. 350, 69 S. W. 17; Womach v. St. Joseph, 201 Mo. l. c. 478, 100 S. W. 443; Charles v. White, 214 Mo. l. c. 211, 112 S. W. 545; Mo. Kan. & Tex. Ry. Co. v. Surety Co., 291 Mo. l. c. 108 to 111, 236 S. W. 657; Northstine v. Feldmann, 298 Mo. l. c. 379, 250 S. W. 589; Handlan v. Wycoff & McMahon, 293 Mo. l. c. 694, 240 S. W. 458; Luther v. Kinion, 200 Mo. App. 159, 202 S. W. 589; Van Hafften v. Clayton (Mo. App.), 259 S. W. l. c. 533.

In those cases an interest in the property was at issue, and for that reason we ruled the question under the general rule that only parties and privies are bound by the judgment.

We do find the ruling on this question in conflict with McDonald, Admr., v. Matney, 82 Mo. 358. In that case plaintiff, administrator of the estate of Armstrong Beattie, sued defendant on a note alleged to belong to said estate. Defendant by answer disclosed no defense to the note, but alleged that James Hull had been a partner of Beattie and as such had an interest in the note. Replying, plaintiff alleged that Hull filed a motion in the probate court alleging that he and Beattie were co-partners from January 1, 1877, to the date of his death, and prayed the court to order the administrator of Beattie's estate to inventory said partnership estate; that trial was had on the motion, which was denied; that the court found that Hull was not a partner of Beattie, and judgment was accordingly entered. Plaintiff offered in evidence the judgment as showing that the estate had title to the note. Defendant objected on the ground that he was not a party to that proceeding, and was therefore not

bound by the judgment. The court overruled the objection and admitted the copy of the judgment in evidence. The only question on review was whether Beattie and Hull were partners. We held it was error to admit the judgment in evidence for the reason that Hull was not a party to the proceeding and therefore not bound by the judgment. Thus it appears that the opinion under review is in conflict with the McDonald case. We ruled the question in that case under the general rule that a judgment binds only parties and privies. In so ruling we did not give recognition to an exception authorizing the admission of a judgment in evidence against strangers, claiming no interest in the property, as tending to show title. The exception is stated by standard texts as follows:

"A judgment may constitute part of a chain of title to real or personal estate, or, though not amounting to title, it may show the character of the possession of one of the parties to a suit. In either case it is admissible in evidence for or against strangers, as well as for or against the parties to the original suit.

"Whenever a judgment transfers a title, or is the foundation of a claim to possession, it is admissible, upon the same principle, as a voluntary conveyance. . . . So if it authorizes a payment to be made, or may otherwise constitute a justification for an act done, it is admissible, though in an action between persons who are neither parties nor privies to it." [2 Freeman on Judgments. (5 Ed.) sec. 1040; 4 Jones on Evidence (2 Ed.) sec. 1819.]

We did not rule correctly on the question in the McDonald case, and it is to that extent overruled.

In the instant case relators are makers and have no interest in the note. They do not charge fraud or collusion in the procurement of the judgment in Brady, Trustee, v. Bank of Dearborn and Commissioner of Finance, and do not contend that all parties interested were not in court. The fact that relators might have a defense against the note in the hands of the bank or Commissioner of Finance does not authorize the rejection of the judgment as evidence on the question of title. The defendants in that case had their day in court, the judgment on the question of title was final and was admissible in evidence as tending to show title in plaintiff. Thus we have an opinion under review which correctly rules the question but is in conflict with a decision of this court. In a similar situation we said:

"The proposition now is what to do with the opinion. If a court of appeals follows our last ruling we will not quash its opinion, although we conclude that our own is wrong. This because such court has obeyed the constitutional mandate by following our last previous rulings. But that is not the situation here. The Court of Appeals refused to follow our last expressions on the vital question, and we have concluded that they were right in so doing. If we quash their

684

opinion for the refusal to follow the latest expressions of our court, then the case is left there for a rehearing, and upon this rehearing this opinion will be our latest ruling, and they would be obligated to follow it under the Constitution. In following it, such court would have to rewrite just what it has now written. The law does not contemplate a useless act, so concluding as we have, that our cases (latest cases) are wrong upon the vital question, the proper thing for this court is to so say, as we have said, and sustain the opinion already written, which we now approve.'' [State ex rel. Thomas v. Daues, 314 Mo. 1. c. 32-33, 283 S. W. 51.]

It follows our writ should be quashed. It is so ordered. All concur.