(No. 6113.   May 7, 1935.)

IRVING R. COLLARD, Respondent, v. UNIVERSAL AUTOMOBILE INSURANCE COMPANY, Appellant.

[45 Pac. (2d) 288.]

562

Martin & Martin, for Appellant.

Carl A. Burke, E. B. Smith, J. W. Galloway and Willis C. Moffatt, for Respondent.

BUDGE, J.—The record discloses substantially the following facts: On February 8, 1930, William P. Gilderoy was the owner of a Chrysler automobile and secured a policy of insurance from appellant thereon, insuring him against public liability. On May 23, 1930, while the policy was in full force and effect, Gilderoy sold the automobile to D. N. Peterson, under a conditional sales contract. As part of the transaction, Peterson delivered his check in the sum of $100 to Gilderoy, and, it appears that in the event the check was not honored on Monday, the 26th, the day it was to be presented to the bank on which drawn, or, in the event that the Commercial Credit Company refused to finance or purchase the conditional sales contract as the parties contemplated, Peterson was to return the automobile. The check was paid and the conditional sales contract was purchased by the Commercial Credit Company. Peterson took possession of the automobile on the twenty-third day of May immediately after the preliminary negotiations. In the morning of the following day, Saturday, May 24th,

Peterson went to Gilderoy's place of business to inquire about the insurance on the car. Gilderoy and Peterson then went to the office of Joseph T. Gallagher, local agent of appellant, at which time Peterson told Gallagher, "that I wanted that the insurance be transferred before I made a trip to Boise which I wanted to make"; and informed Gallagher of the agreement with relation to the purchase of the car, the contract, and of the transaction generally that he had made with Gilderoy, and further that the deal would be concluded on the following Monday. Gilderoy testified that he accompanied Peterson to Gallagher's office, at which time the following conversation was had with Gallagher:

"Q. You did have a conversation about the insurance then?

"A. Yes, we did.

"Q. Who was present at that time?

"A. Mr. Peterson and Joseph T. Gallagher.

"Q. Where did you have this conversation?

"A. At Gallagher's office.

"Q. Go ahead and state that conversation you had at that time.

"A. We asked that the insurance policy be transferred to Mr. Peterson, and explained to him how—

. . . . . . . . . . . .

"Q. You said you explained to him,—

"A. How the deal would be completed Monday morning.

"Q. Just what did you say?

"A. We were telling him because we wanted to be sure the car was covered."

"We explained to him the conditions of the contract and about the check being honored by the Commercial Credit Co., and the bank."

"We told him if the contract and the check was honored by the Commercial Credit Co., the deal would be concluded Monday. He said 'All right, the policy will be in force.'"

"It was understood that the policy would cover the car through Mr. Gallagher."

It is clear from the testimony of Peterson that he went to Gallagher's office, and after telling Gallagher he had made the deal with reference to the Chrysler automobile, told him that he wanted the insurance to be transferred before he made a trip to Boise, and that Mr. Gallagher then stated: " 'that will be all right, there is no use bringing the policy in now, I will fix it up Monday morning; bring the policy in Monday and I will fix it up after the deal is straightened up.' "

Peterson reiterated that he "wanted to be sure of insurance on the car."

Following the conversation with Gallagher, Peterson started for Boise in the Chrysler automobile and on the way became involved in a collision with a truck in which respondent Irving R. Collard was riding and which accident resulted in personal injuries to respondent.

On January 27, 1931, respondent commenced an action against Peterson for damages as the result of the personal injuries sustained by him in the accident and secured a judgment in the amount of $1,101.40. On April 8, 1932, execution was issued on the judgment, which was returned unsatisfied.

On September 9, 1931, Peterson brought suit against appellant seeking to recover the amount of the judgment above mentioned and also the amount of another judgment recovered by Frank Collard against him, also growing out of the same accident. Peterson also sought to recover in the action his attorney fees and costs incurred in defending the two Collard suits. Right to recovery in the action brought by Peterson was based on the theory that Gilderoy, under the facts with relation to the sale of the automobile, was the owner thereof at the time of the accident, and that Peterson was entitled to recover under the following clause of the policy:

"In addition to the Assured named in this policy, such insurance as is granted under Item 1 and/or Item 2 shall be available, in the same manner and under the same conditions and to the same extent as it is available to the

Assured named herein, to any person or persons, except chauffeurs and domestic servants, while riding in or legally operating the automobile covered by this policy, and to any person, firm or corporation legally responsible for the operation thereof; but only while it is being used for the purposes specified in Statement 7 of the 'Schedule of Statements' and with the consent of the Assured named herein; or, if such Assured is an individual, of an adult member of his household who is not a chauffeur or domestic servant.''

The district court in that action at the close of plaintiff Peterson's evidence entered a judgment of nonsuit and dismissed the action and upon appeal the trial court's judgment was affirmed. (*Peterson v. Universal Auto. Ins. Co.,* 53 Ida. 11, 20 Pac. (2d) 1016.)

· The case at bar was commenced by respondent Irving Collard against appellant, under the provisions of the policy relating to the right of action of an injured person after obtaining judgment against an assured and after an execution thereon has been returned unsatisfied, the provision reciting:

''It is understood and agreed that the Insolvency or Bankruptcy of the Assured or other persons entitled to benefit hereunder shall not release the Company from the payment of damages for injuries or loss occasioned during the life of the policy. In case execution against the Assured or such other defendants is returned unsatisfied in an action brought by the injured (or if death results from the accident, by such other parties in whom the right of action vests) an action may be maintained by the injured person (or such other parties in whom the right of action vests) against the Company for the amount of the judgment of said action not exceeding the amount of the policy.''

The present action is based upon the theory that, assuming there was such a transfer of ownership of the automobile as to avoid the policy under the provisions contained therein, providing:

''All rights hereunder are strictly personal to the Assured named in this policy, and this policy shall terminate im-

mediately if there is any change, voluntarily or otherwise, in the ownership or interest of such Assured in this policy or in the automobile insured hereunder''; and:

"No erasure or change appearing in this policy as originally written, and no alteration, change or waiver of any of its terms, provisions or conditions, shall be valid unless made by written endorsement attached hereto and countersigned by a duly authorized agent of the Company; nor shall notice to or the knowledge of any officer of the Company or of any agent or other person received or acquired before or after the date of this policy be held to effect a waiver, change or alteration of any part of this contract."

nevertheless such provision is waived, and appellant is estopped from claiming nonliability in view of the statements and conduct of its local agent, Gallagher.

At the close of respondent's testimony appellant made a motion for nonsuit and at the close of all the evidence renewed its motion and also made a motion for an instructed verdict, which motions were denied. The case was tried to the court and a jury and resulted in a verdict in favor of respondent upon which judgment was entered. Thereafter appellant moved for a new trial, which motion was denied. This appeal is taken from the judgment and the order overruling appellant's motion for a new trial.

Appellant has enumerated some 21 assignments of error and many of these are divided into subassignments. We will not attempt to consider each and every assignment separately but will consider those propositions which are determinative of this case.

Many of appellant's assignments of error are based upon its proposition that the judgment in the former case, *Peterson v. Universal Automobile Ins. Co., supra,* is *res judicata* of respondent's rights, and that it constitutes a bar to this action and estops respondent. The argument is to the effect that under the provisions of the policy respondent's rights are no greater nor higher than those of Peterson, and presents the question of the injured party's rights, after re-

covery of judgment against the insured and the return of execution thereof unsatisfied, under the provisions of the policy, heretofore quoted, giving an injured party a cause of action against the insurer for the recovery of his judgment.

It has been determined that such a clause creates a primary liability against the insurer in favor of persons injured or damaged, of which the assured cannot by any act of his divest the injured party, and the considerations stated make the reason for such conclusion apparent. As is said in *Watson v. Royal Indemnity Co.*, 56 Fed. (2d) 409:

"The injured person and the insured are hostile parties. The injured person is claiming damages directly of the insured, and only contingently of the company. The insured is trying to save his own skin." (*Finkelberg v. Continental Casualty Co.*, 126 Wash. 543, 219 Pac. 12; *Gugliemetti v. Graham*, 50 Cal. App. 268, 195 Pac. 64.)

It appears that respondent herein and appellant are not in privity in the sense that that term is used with relation to respondent being barred by the judgment rendered in the suit between Peterson and appellant, and it likewise appears from the record that respondent was not a party of record in the former action. In order to make a judgment obtained in one action conclusive in another, it must appear that the former was rendered in an action between the same parties, or between those in privity with parties to the former action. (34 C. J. 756, sec. 1165; 34 C. J. 811, sec. 1229; 34 C. J. 973, sec. 1391; 34 C. J. 984, sec. 1405.)

It is urged, however, that respondent assumed such control over, and took such a part and interest in, the action between Peterson and appellant that the judgment obtained therein is binding upon respondent. While the record discloses that respondent may have taken some part in the former suit, there was proof submitted in the present case as to the nature of respondent's connection therewith and the court permitted the jury to determine the question of whether or not respondent's participation was

sufficient to constitute the judgment in the former action a bar to the second action brought by respondent, which question the jury answered in favor of respondent. The evidence with relation to respondent's participation in the Peterson suit is to the effect that respondent appeared as a witness; some consultation among attorneys for Peterson and respondent; some contribution in the expense of the appeal taken; and assistance in preparation of briefs on appeal. It is generally necessary that a person, not a party to a pending suit, in order that such suit constitute *res judicata*, appear openly in the case to the knowledge of the adverse party, and it is not sufficient to bind him that he merely advised or aided in the trial, gave evidence, contributed to the expense or otherwise aided therein in such respects. (34 C. J. 1007, sec. 1427; 34 C. J. 1009, sec. 1431.)

"In order that a person not technically a party to a judgment may claim the judgment as having the effect of *res judicata* in his favor, it is generally necessary that he should appear openly in the case to the knowledge of the adverse party. The right to intervene in an action does not, in the absence of its exercise, subject one possessing it to the risk of being bound by the result of the litigation. So mere knowledge of a suit by a person and the giving of assistance through counsel in preparing briefs will not make the judgment binding on him. Nor will the mere fact that a person not a party to a pending suit employs counsel to assist in the defense thereof make him a party or privy to such proceedings, nor estop him from questioning the issues determined therein. . . . . " (15 R. C. L. 484, p. 1011.)

*Litchfield v. Crane,* 123 U. S. 549, 8 Sup. Ct. 210, 31 L. ed. 199; *Rumford Chemical Works v. Hygiene Chemical Co.,* 215 U. S. 156, 30 Sup. Ct. 54, 54 L. ed. 137; *Handlan v. Wycoff,* 293 Mo. 682, 240 S. W. 458; *Womach v. St. Joseph,* 201 Mo. 467, 100 S. W. 443, 10 L. R. A., N. S., 140; *Gerwein v. McDonnell,* 54 N. D. 509, 209 N. W. 986; *Burns*

*v. Baldwin-Doherty Co.,* 132 Me. 331, 170 Atl. 511; *Stonecipher v. Keane,* 268 Pa. 540, 112 Atl. 233.

The rights of a person not a party to a suit, nor in privity with a party, are not affected by the judgment rendered therein, but their rights are to be determined as if the judgment had never been rendered. (34 C. J. 1043, sec. 1480; *Mays v. District Court,* 34 Ida. 200, 200 Pac. 115.)

The plea of *res judicata* is an affirmative defense and the burden rests on the party asserting it to establish all of the essential elements thereof by a preponderance of the evidence. (*Abraham v. Owens,* 20 Or. 511, 26 Pac. 1112.) From an examination of the record and the authorities we are not constrained to hold that the plea of *res judicata* and estoppel were established by the appellant. It would seem quite clear that the present action presents an entirely different cause of action than that involved in the case of *Peterson v. Universal Auto Ins. Co., supra,* and, even conceding that respondent was a party or privy to that action, in order to successfully maintain the plea of *res judicata* it must have been made to appear that the precise question was raised and determined in the former suit. (*Rogers v. Rogers,* 42 Ida. 158, 243 Pac. 655.)

It is further contended that the court abused its discretion and erred in overruling and denying appellant's motion that its plea in abatement be heard by the court without a jury. In our opinion the court did not abuse its discretion in this regard in view of the provisions of I. C. A., sec. 7–106, providing as follows:

"The court in its discretion may order the issues raised by plea of another action pending, or of former adjudication, to be separately tried prior to any trial of the other issues in the case."

This action was commenced under the provisions of the policy, heretofore referred to, giving a right of action to an injured person after obtaining judgment against the insured and after execution thereon is returned unsatisfied, upon the basis that a transfer of the ownership of the

Chrysler automobile had been made from Gilderoy to Peterson prior to the collision, and that the provision of the policy relating to change of ownership had been waived and appellant was estopped by and through the statements and conduct of Mr. Gallagher, its local agent. Appellant urges that there was no waiver of the change of ownership provision of the policy. This court has heretofore held:

"An insurance company may, however, waive any provision in a policy for its protection by acts or conduct of its agents within the scope of their authority, and be estopped from availing itself of a violation of the terms of the policy to the effect that the company shall not be bound by any such conduct or representations of its agents. (Citing cases.)" (*Farmers' etc. Bank v. Hartford Fire Ins. Co.*, 43 Ida. 222, 223, 253 Pac. 379.)

An insurance company may elect, through its agent, to continue insurance with a new owner although the policy provides it should be void for change of ownership. (*State Central Sav. Bank v. St. Paul Fire & Marine Ins. Co.*, 184 Iowa, 290, 168 N. W. 201; *Sheets v. Iowa State Ins. Co.*, 153 Mo. App. 620, 135 S. W. 80; *Continental Ins. Co. v. Bair*, 65 Ind. App. 502, 114 N. E. 763, 116 N. E. 752.)

With reference to the authority of appellant's agent, appellant admitted by its answer that he was "its duly authorized agent at Weiser, Idaho, with authority from defendant to sell and issue policies of insurance such as" the one concerned herein, and that "The defendant through its agent Joseph T. Gallagher at Weiser, Idaho, made, executed and delivered to William P. Gilderoy its said policy of insurance." In addition there is evidence in the record that Gallagher was the general agent of appellant, that he signed and delivered policies, received reports of accidents under policy clauses requiring reports to be made to appellant, accepted policies for cancelation, canceled policies and made refunds of premiums. It has been generally held, especially in view of statutes similar to I. C. A., sections 40–901 and 40–902, providing for the writing of

insurance only through licensed agents residing within the state, that an agent of a foreign insurance company who has power to solicit and take applications, collect premiums, and countersign and deliver policies, may bind his principal by an oral contract of insurance, or may waive a policy requirement of written consent of the company to an assignment of the policy, and the company is estopped from denying authority to make such waiver, and especially when such consent is wholly due to acts of the agent and not of the insured. (*Henry Clay Fire Ins. Co. v. Grayson County State Bank*, 239 Ky. 239, 39 S. W. (2d) 482; *Sheets v. Iowa State Ins. Co., supra; Bealmer v. Hartford Ins. Co.,* (Mo. App.) 193 S. W. 847; *Prichard v. Connecticut Fire Ins. Co. of Hartford,* (Mo. App.) 203 S. W. 223; *Ferguson v. Home Ins. Co. of N. Y.,* 208 Mo. App. 422, 236 S. W. 402; *Maryland Casualty Co. v. McTyier,* 150 Tenn. 691, 266 S. W. 767, 48 A. L. R. 1168.)

The evidence was sufficient to justify the finding of the jury to the effect that appellant, through its agent, had full knowledge of all the facts of the change of ownership, and, being in possession of such knowledge, through its agent, waived the provision of the policy with reference to change in ownership, and the legal effect was to continue the policy in force under the changed conditions.

We have examined the instructions and find no reversible error. An examination of the entire record convinces us that there was sufficient competent evidence to support the jury's verdict. The judgment is affirmed. Costs awarded to respondent.

Givens, C. J., Holden and Ailshie, JJ., and Rice, D. J., concur.

Petition for rehearing denied.