H. S. BENNETT, Appellant, v. MONTICELLO STATE BANK, Appellee.

No. 44565.

APRIL 4, 1939.

John J. Kintzinger, for appellant.

Locher & Locher and George C. Gorman, for appellee.

OLIVER, J.—This is an action at law by H. S. Bennett, appellant, against the Monticello State Bank, appellee, on a certificate of deposit issued by said bank, on June 8, 1932, reciting L. H. Bennett has deposited $3,591.26, payable to order of H. S. Bennett, or self, and another certificate in the same form, dated May 31, 1933, for $1,400. Both of said certificates were paid by said bank to L. H. Bennett, July 20, 1933.

L. H. Bennett was the father of appellant. Appellant alleged that in 1932 it was agreed between him and his father that if appellant and his wife would move from Colorado to the home of father Bennett in Jones county, Iowa, for the purpose of establishing a permanent residence and being near father Bennett during his declining years, father Bennett would place money in appellee bank for appellant, that appellant and wife carried out their part of the agreement and that the certificates of deposit above described were for money deposited by father Bennett in appellee bank in connection with his part of the agreement. However, appellant alleged that at the time of delivery of said certificates, H. S. Bennett was the sole payee therein, and that thereafter, without the consent of appellant, the same were materially altered by the bank, or with its knowledge and consent, by adding, after the name of appellant, the words ''or self''. In other words appellant contends that the certificates were originally made payable to the order of appel-

lant alone and were thereafter changed so that the same were payable to the order of appellant or to the order of father Bennett.

Appellant alleged that he was the owner of the claims against appellee bank on said certificates and prayed judgment for the amount thereof. The bank controverted the various allegations of the petition alleging, among other things, that the money represented by the certificates was deposited by father Bennett for his sole use and benefit; that neither the money nor the certificates were ever delivered to appellant, and appellant had no interest therein; that the same belonged to father Bennett and he exercised complete control and dominion over the same, and that the bank properly paid the same to father Bennett.

For additional defense, the bank also set up a prior adjudication as a bar to said action. Said claimed prior adjudication rested upon an action brought by father Bennett, as plaintiff, against appellant and appellee bank, as defendants, and tried on its merits in 1936, about one year prior to the trial of the case at bar. In the former trial father Bennett alleged the bank was holding $1,221.84 of his funds on account of claims made thereto by appellant and prayed judgment therefor. The bank answered that father Bennett and appellant were both claiming said funds; that it claimed no interest therein and was holding the same for delivery as the court might direct. Appellant answered setting up the aforementioned agreement with his father that he should have this $1,221.84, and counterclaimed against his father therefor.

In said counterclaim and based upon said alleged agreement, appellant also alleged that his father had deposited in said bank, in the name of appellant, $1,400 and $3,591.26 (as evidenced by the aforementioned certificates), and that said father withdrew from said bank the funds which he had theretofore deposited to the account of appellant, and refused to deliver said funds to appellant. Wherefore appellant prayed judgment against his father, among other things, for said sums of $1,400 and $3,591.26 deposited in said bank as aforesaid.

The reply of father Bennett to said counterclaim contained, in part, averments which generally denied the alleged contract with appellant and specifically denied that he made the deposits in question *for appellant*. Upon the issues thus made said

former case was tried and submitted to a jury under appropriate instructions setting out the claim that the father deposited in the bank for appellant's use and benefit, on June 8, 1932, the sum of $3,591.26, and on May 31, 1933, the sum of $1,400, and the issues between the father and son relative thereto. The jury was instructed that if a contract was made between father Bennett and appellant to the effect that father Bennett would deposit sums of money in the bank for appellant and thereafter father Bennett did deposit $1,400, or other definite sum or sums, for appellant, then such contract was enforceable, and the jury should allow appellant such amounts as it found father Bennett deposited in said bank for the use and benefit of appellant in conformity with said contract. The verdict of the jury and the judgment thereon were for appellant on his counterclaim for $1,221.84, which covered only the first item of appellant's counterclaim, not included in this case, and did not include the amount represented by either of the certificates of deposit in question.

It was and is the plea and contention of appellee that this judgment constituted a final adjudication that the father, who had previously cashed the certificates evidencing said deposits, was the owner thereof and that appellant was not the owner thereof, nor entitled thereto; that said adjudication is binding upon appellant and bars him from maintaining this action.

Although appellee bank was a party to said former suit, it filed no pleadings therein other than its answer above mentioned. In both cases the two certificates of deposit, stamped "paid Jul. 20, 1933", were part of the evidence, and, from appellant's cross-examination in the case at bar, it appears that in each trial he testified similarly with reference to a visit to the bank and an inspection of its records covering two deposits in controversy. At the conclusion of the evidence in the case at bar, a verdict was directed in favor of the bank and against appellant, and judgment entered accordingly, from which this appeal is taken.

Although the verdict was directed generally it appears to have been based upon the effect of the former adjudication. In that case the father was plaintiff, and appellant and appellee were co-defendants. However, their positions were not identical since the bank made no claim to any of the funds in question. The first case was predicated upon the arrangement with the

father, under which appellant claimed the deposits by the father were made to the account of appellant and, therefore, he had title in and ownership of the funds. This alleged state of facts also constituted the foundation of the case at bar.

In the former case appellant also alleged that the father withdrew the funds from the bank and refused to deliver them to appellant. This allegation although not formally admitted, was apparently undisputed and no instruction to the jury appears to have been required upon it. The paid certificates of deposit, in evidence in both cases, established the fact that the funds in dispute had been withdrawn from the bank on July 20, 1933.

That the deposits had been made was undisputed. The issue in both cases was *how* they had been made. In each it was necessary for appellant to prove title in order to succeed. Since he was relying upon the same title in both cases, it follows that in each the same evidence would be necessary to establish such title and ownership.

Appellant contends that the doctrine of res judicata or estoppel will lie only when the subsequent action is between the same parties or their privies. However, the doctrine invoked by appellee is not res judicata or technical estoppel as ordinarily defined, but rather an extension or exception thereto, called the "muniment of title doctrine". Under this doctrine a judgment may constitute part of a chain of title to real or personal estate, or though not amounting to title it may show the character of the possession of one of the parties to a suit.

This rule was followed in Commercial National Bank v. Allaway, 207 Iowa 419, 223 N. W. 167. Commercial National Bank had purchased at private sale certain notes pledged to it by Iowa Savings Bank. A subsequent suit instituted by the receiver of Iowa Savings Bank to set aside said sale as fraudulent was decided in favor of Commercial National Bank and title to the notes decreed in it. Thereafter Commercial National Bank sued Allaway, the maker of one of the notes, who attempted to set up the same claim of fraud as had been made by the receiver in the former suit. Upon a plea of res judicata by the bank it was held that the questions involving the ownership of the note sued upon had been adjudicated in favor of the bank and that the maker of the note was bound thereby even though he was not a party to that suit, and, therefore, he

could not have the same question adjudicated a second time. In that case the court noted that the adjudication became effective, especially in view of the fact that the defendant, in attempting to show the defective title used the same evidence presented on the former trial and said, loc. cit. 207 Iowa 424, 223 N. W. loc. cit. 169:

"Conclusion is thus reached, not so much on the theory of former adjudication as between appellant and appellee, but rather, upon the doctrine that the judgment in the litigation between appellant and the Iowa Savings Bank amounted to, and is, a 'muniment of title' which appellee cannot deny or contest under the facts here presented. Furthermore, in order for appellee to successfully deny appellant's title in the premises, it is necessary for him to put himself in the place of the Iowa Savings Bank, and again argue its case, although there was a previous determination of that cause. The Iowa Savings Bank is bound because of the former adjudication, and appellee is concluded because that 'adjudication' amounts to a muniment of title with which appellant is armed."

Miller v. Laing, 212 Iowa 437, 236 N. W. 378; and Beh v. Bay, 127 Iowa 246, 103 N. W. 119, 109 Am. St. Rep. 385, while not directly in point, indicate that the above case is not a departure from our other holdings. See, also, Jenkins v. Atlantic Coast Line R. Co., 89 S. C. 408, 71 S. E. 1010; State ex rel. Kirby v. Trimble, 326 Mo. 675, 32 S. W. 2d 569.

Not based upon the cited doctrine, but containing elements of similarity to the case at bar is Smith v. Cretors, 181 Iowa 189, 164 N. W. 338. There the prior adjudication was in a suit to quiet title, in which a mother and son were both defendants. The later suit was brought on behalf of the son against the mother for the proceeds of the sale of the property, and the court therein said that the fact that they may not have been adversative parties in the former suit and that, therefore, there was no adjudication between *them* as to where title lay, would not, in itself, destroy the binding force of the former decree. The decision states in discussing the effect of said decree, loc. cit. 181 Iowa 192, 164 N. W. loc. cit. 339:

"The plea interposed is not the strict *res adjudicata,* but urges an estoppel to relitigate whatever is covered by any find-

ing in the first suit which must have been the vital basis of the decree therein entered. On such plea the court may go beyond the face of the judgment, and the right to litigate succesfully in the second suit may be foreclosed, because it is found upon such investigation that the decree pleaded could not have been entered without finding against the suitor that fact upon establishing which his success in the second suit depends.''

Dunnick v. Hagedorn, 196 Iowa 1067, 195 N. W. 994, was a suit for commission for finding a purchaser of real estate. Defendant denied there was a valid contract of purchase and sale. However, in a former case of Hagedorn v. Hagedorn, 194 Iowa 172, 188 N. W. 980, in which case the defendant in the latter case was plaintiff, said contract of purchase and sale had been decreed valid and binding. Dunnick was not a party to the former case. However, the court held that the prior adjudication holding said contract valid, would, in the subsequent case, be conclusive against defendant, Hagedorn.

We think the muniment of title doctrine controls the case at bar. The judgment in the former suit established in the father the title and ownership of the funds in controversy and adjudicated that appellant had no ownership in nor title thereto. Applying the principles of that doctrine we, therefore, hold appellant is barred from maintaining this action based upon the same alleged title to the deposits in question. Having once tried his case upon the merits he may not properly relitigate it, since the former judgment constitutes a muniment or proof that he had no ownership in nor title to the property in controversy but that the same belong to his father. Therefore, the district court properly directed a verdict in favor of the bank.

This holding renders unnecessary the consideration of other propositions argued by appellee as sustaining the ruling of the trial court.

The judgment is affirmed.—Affirmed.

MITCHELL, C. J., and all JUSTICES concur.