**CATTLE OWNERS CORPORATION et al., Plaintiffs,**

v.

**David ARKIN et al., Defendants.**

**SWINE OWNERS CORPORATION et al., Plaintiffs,**

v.

**Leo JACOBSON et al., Defendants.**

Nos. 5–1323, 5–1324.

United States District Court
S. D. Iowa,
Central Division.
April 6, 1967.

Robert E. Mannheimer, John H. Neiman, Matthew J. Heartney, Jr., Des Moines, Iowa, Leslie L. Boomhower, Mason City, Iowa, Marvin R. Adams, Des Moines, Iowa, William Pappas, Mason City, Iowa, Paul F. Ahlers, Kenneth H. Haynie, Donald A. Wine, Des Moines, Iowa, Matthew Silverman, New York City, Harold H. Newcomb, Hiram S. Hunn, D. J. Fairgrave, Mark W. Putney, John D. Galvin, John McClintock, Eugene Davis, Des Moines, Iowa, for defendants

## MEMORANDUM AND ORDER RE DISTRIBUTION

HANSON, District Judge.

### INTRODUCTION

The major premise that "all things must end" has appropriate application in these proceedings. In previous rulings, orders, and judgments the historical sequence of these causes have been supplied; they will not again be reiterated. Suffice it to say; on August 25, 1964, the Receiver filed in each of these cases a document entitled "Report and Recommendations of Receiver in Response to Court Order of July 8, 1964." In these reports the Receiver recommended that the assets be turned over to the respective bankruptcy trustees and that, on final distribution, the investors be treated as general creditors of the bankrupts.

On February 28, 1966, this Court filed its Memorandum and Order, 252 F.Supp. 34, rejecting the Receiver's recommendations for turnover and distribution. Judgment was entered on that date denying and rejecting the Receiver's report and recommendations, holding that the Trustees have no interest in the assets in the custody of the Receiver, decreeing that there is no just reason for delay, and directing the entry of final judgment against the Receiver and Trustees. The Court reserved jurisdiction only as to the distribution of assets, set a hearing on March 15, 1966, for consideration of proposed orders of distribution, and provided that: "Subsequent thereto, the Court will direct the Receiver to file his Report and prescribe a limited time for

Philip H. Cless, Des Moines, Iowa, for plaintiffs and receiver.

filing objections thereto or for filing claims for the proceeds of specific animals."

On May 5, 1966, following this hearing, the Court entered a Memorandum and Order directing the Receiver to prepare a Report for Distribution in each receivership, and specifying in detail, how such Reports should be prepared. Said Order provided that, within five days after the filing of such Reports, the Receiver should mail copies of same to all parties or their counsel, and give notice that all objections to the distribution proposed therein, including any claims of ownership of specific cattle or proceeds thereof held by the Receiver or individual owners, must be filed within 20 days after the filing of said Reports. Said order further provided that "The Court will thereafter hear all objections and claims in opposition to the Receiver's Report for Distribution and will order such distribution of the funds in the hands of the Receiver as may be appropriate."

The Receiver filed Reports of Proposed Distribution on August 31, 1966. Objections thereto were filed by several of the parties, and various parties filed Replies to the Objections filed by others. On February 21, 1967, an Order was filed setting for hearing and trial all undisposed of motions and objections in these causes, of which notice was given to all parties, which hearing was set for March 13, 1967, at 10:00 a. m.

There was thus before the Court at said hearing and trial all issues relating to the distribution of the assets accumulated by the Receiver in these causes, and all matters pertinent to the disposition of same, including all pleadings and motions heretofore filed, all evidence taken, all prior memoranda and orders of this Court, and all other matters of record in these causes. It was understood and agreed by all parties that all of the foregoing could and should be considered by the Court in making this decision.

All parties had the opportunity to present such evidence and argument as they desired. By reason of withdrawal of certain objections and issues, and failure to offer evidence on certain others, the scope of the evidence and argument offered at the hearing commencing March 13, 1967, was limited principally to the following:

(1) The claim of Mike Sherman that $1,337.75 received by the Receiver from Hi-Dollar Sales Company should be paid to Mike Sherman, rather than treated as unallocated funds and applied against general expenses of the Receivership in the swine case;

(2) The claims of Nathan Sheinman, Mortimer Roaman, Ebe Cella Zuckerman and Richard Zimmerman that distribution in the swine case should be on a "net investment basis" rather than as proposed in the Receiver's Report;

(3) The claim of Meservey Livestock Corporation that Leo Jacobson transferred his interest in swine to it;

(4) The claim of Bertel G. Smith, purportedly in behalf of Foremost Breeders, Inc., and the claim of Bertel G. Smith, Administrator, that the Jacobson Estate, as beneficial owner of Foremost Breeders, Inc., should have distribution of cattle proceeds, free of the liens of mortgages placed on said animals by Leo Jacobson, and that the Receiver's Report of distribution in the cattle case gives the banks and Mike Sherman a lien on assets to which they are not entitled (the "dragnet clause" issue);

(5) The claim of Edward R. Boyle to a lien for attorney's fees against the interests of Leo Jacobson's Estate and Martha Jacobson in the cattle case.

Now, therefore, having in mind the evidence offered at the hearing commencing March 13, 1967, and all pleadings, motions, memoranda and orders of Court heretofore filed in these cases, all evidence heretofore offered, and all other matters of record herein, the Court makes and enters the following findings of fact, conclusions of law, and order:

## FINDINGS OF FACT

*Objections of Mike Sherman.*

1. The Court has heretofore decreed, and the Receiver's Report in Civil

No. 5–1324 recognizes, that Mike Sherman has a lien in the amount of $20,000.-00, plus interest at 7% from January 15, 1962, against the interest of Kirshman Associates by reason of a mortgage on their hogs. Over a year prior to the commencement of this case, Hi-Dollar Sales Co. came into possession of funds in the amount of $1,337.75 belonging to Kirshman Associates, by reason of sale of hogs belonging to same, which were subject to the lien of the mortgage held by Mike Sherman. Pursuant to order of this Court, dated May 28, 1964, these funds were turned over to the Receiver for future distribution to the proper party. The Receiver's Report treats this money as unallocated funds, to be applied against the general expenses of the receivership. Mike Sherman has objected to this, claiming that this money does not belong in the receivership, and that he is the proper party to receive same. No party has contested Mike Sherman's claim. The court finds that his objections should be sustained, and that this money should be paid to him forthwith.

*Theory of distribution in swine case.*

2. Objections to the Receiver's Report of Distribution have been filed by Nathan Sheinman, Mortimer Roaman, Ebe Cella Zuckerman and Richard Zimmerman. All of them urge the Court to distribute swine on a "net out-of-pocket investment" theory and base their proposal on an extension of Receiver's Exhibit T–81–S, offered into evidence over objections as to admitted inaccuracies in the hearing before this Court commencing January 5, 1965. These objectors offered evidence of certain acts of Carroll Morris, d/b/a Swine Improvement Association, which are claimed to have resulted in inequities. It appears to the Court that the objectors have failed to show that they were in any way prejudiced by such acts, all of which took place prior to the formation of Swine Owners Corporation.

3. Extensive evidence relative to the records of Swine Improvement Associa-tion, its successor Swine Owners Corporation and the Receiver for the latter was taken in the hearing commencing January 5, 1965; and that evidence demonstrated conclusively that those records were consistently and accurately maintained and that, even as to offspring, such records accurately reflected the owner entitled to the proceeds of the sale of animals. The Court has particular reference to the testimony of Marvin (Pat) Morris and his wife, Maxine Morris. That the objectors herein were given notice of said hearing, and to the extent the evidence adduced at said hearing is applicable, the objectors are bound thereby.

4. No evidence was offered or adduced in the present hearing in substantial conflict with the findings made with respect to the prior hearing and in fact Carroll Morris, a witness offered on behalf of the objectors herein, confirmed the accuracy of records maintained for Swine Improvement Association by Maxine Morris repeatedly. The Receiver's Report of Distribution filed in Civil No. 5–1324 herein is proper, is consistent with the evidence adduced herein relative to swine ownership, and should be approved and confirmed.

5. There are admitted inaccuracies and inequities in Receiver's Exhibit T–81–S as shown by the evidence concerning the same adduced in the prior hearing in this Court commencing January 5, 1965. The proposed method of distribution offered by the objectors would result in inaccurate and inequitable distribution of funds, and would be inconsistent with the records of ownership maintained by Swine Improvement Association and its successors.

6. Said objectors have failed to sustain their burden of showing any facts which would entitle them, or any of them, to the relief they seek.

7. Furthermore the objections of these parties constitute substitute proposals of distribution, and this Court in its Memorandum and Order entered Febru-

ary 28, 1966, requested that proposals of distribution be submitted in writing at the hearing set for March 15, 1966; at said hearing further proposals of distribution were requested; that counsel for the parties offering the objections herein received copies of the February 28, 1966, Order and attended the March 15, 1966, hearing but failed to offer a proposal for distribution; and their alternate proposal for distribution is not timely filed.

*Meservey Livestock Corporation's claim.*

8. Meservey Livestock Corporation filed objections in Civil No. 5–1324 to the Receiver's Report of Proposed Distribution alleging that it was the sole owner of the proceeds from hog liquidations attributed in the Receiver's Report to the Leo Jacobson Estate and therein subjected to the lien claims of Leo Jacobson's creditors, Mike Sherman, United Home Bank, and American National Bank and Trust Company of Chicago, Illinois. These objections were based on a bill of sale dated October 13, 1962, from Leo Jacobson to the objector and on a letter agreement dated the same date.

9. Nathan Sheinman testified that he had formed Meservey Livestock Corporation with the idea that it would acquire all of the hogs owned by the various parties under contract with Swine Improvement Association; that it in effect would replace Swine Owners Corporation as the liquidating agency and that he would pay all of the owners 100 cents on the dollar. He was its sole officer and stockholder. He also testified that the commencement of these interpleader actions made it impossible to carry out that plan and that he did not get possession of any hogs.

The letter agreement of October 13, 1962, provided that Meservey Livestock would remit to Leo Jacobson "80% of the gross sales price of all of the aforesaid livestock sold by others and as to which, you (Meservey Livestock) shall not have obtained possession but in respect of which, you receive compensation. You shall also pay to me (Jacobson) 80% of the gross sales price which you may realize upon your liquidation of that por-

tion of said livestock as to which you shall obtain possession." Said agreement further provided for Meservey Livestock to issue to Jacobson its $25,000.00 promissory note payable January 31, 1963, with interest at the rate of six per cent on account of the "sales price payable under paragraph 3." The first paragraph of said letter agreement provided as follows: "I desire to sell all my interest in my breeding sows and boars although I cannot be certain or make any representations as to their existence and whereabouts and you have indicated your willingness to purchase the same with full knowledge of the facts." The promissory note referred to in the letter was returned by Jacobson to Nathan Sheinman or Nathan Sheinman's attorney, has never been paid nor has any demand for payment been made nor does said note appear as an asset in the inventory filed by the executor of the Leo Jacobson Estate in New York.

Sheinman's testimony indicates that he had specific knowledge of the claims of Mike Sherman, and awareness of debtor relationships between Jacobson and United Home Bank and American National Bank. The Estate of Leo Jacobson has filed no objection to the application of the liens of Mike Sherman, United Home Bank and American National Bank and Trust Company to the proceeds held by the Receiver in Civil No. 5–1324.

10. For all of the following reasons the Court finds that the objections of Meservey Livestock Corporation are without merit and should be denied:

a. The transaction was abandoned and not completed by the parties upon the inception of these interpleader actions, as evidenced by the return of the promissory note and the objector's failure to pay it and the failure of Leo Jacobson or his estate to make demand for payment or to treat it as an asset of the estate.

b. Even if not deemed abandoned, the purported transfer from Jacobson to Meservey Livestock was, at best, a quit claim conveyance and the rights acquired by Meservey Livestock

Corporation thereunder could be no better than those possessed by Jacobson himself. The first paragraph of the letter agreement stated that Jacobson was selling all of his interest in the animals although he could not be certain or make any representations as to their existence and whereabouts and that Sheinman was making the purchase with "full knowledge of the facts." By his own testimony Sheinman admitted knowledge of the Mike Sherman claims and an awareness of indebtedness of Jacobson to United Home Bank and American National Bank and Trust Company, and had examined certain of their instruments. As between Jacobson and his creditors, Sherman, United Home Bank and American National Bank and Trust Company, the liens of their mortgages extended by their terms to all of the animals liquidated by the Receiver. Jacobson's quit claim conferred no higher rights upon Meservey.

c. The contract between Jacobson and Meservey Livestock Corporation was in reality a form of agency agreement whereby Meservey Livestock undertook to take possession of and liquidate hogs or obtain proceeds of hogs liquidated by others. Meservey Livestock Corporation was to receive 20% of the *gross* sales price of liquidated hogs and was to pay from that percentage all costs of liquidation or acquisition of proceeds. It was expected that those costs would be substantial and it is clear that by retaining an interest in 80% of *gross* sales proceeds Leo Jacobson remained the actual beneficial owner of the hogs. There was no bona fide transfer of title. Meservey obtained possession of no livestock and is claiming only proceeds from sales made by the Receiver. The Receiver's accounting makes clear that the amount available for distribution is less than 80% of the *gross* sales price of the animals purported to be transferred to Meservey by Jacobson. Accordingly, any funds received by Meservey Livestock would be owed to the Leo Jacobson Estate. This Court having prevented said creditors of Leo Jacobson from perfecting their liens through pending and contemplated at-tachments against properties of nonresident debtors or otherwise pursuing their security by conventional remedies during the pendency of these actions, finds that equity requires that such creditors be protected and their liens established against the proceeds of the liquidation of the animals alleged to be owned by Meservey Livestock Corporation, inasmuch as the proceeds of such liquidation would be payable to the Jacobson Estate as beneficial owner in any event. The equities are in favor of said creditors and against Meservey Livestock Corporation.

*Objections of Bertel G. Smith, Administrator of the Estate of Leo Jacobson, Deceased, on Behalf of said Estate, and on Behalf of Foremost Breeders, Inc. (Civil No. 5–1323).*

11. Bertel G. Smith, Administrator of the Estate of Leo Jacobson, deceased, in Civil No. 5–1323 objects mainly to the Receiver's Report for Distribution insofar as it extends liens of United Home Bank, American National Bank and Mike Sherman, creditors of Leo Jacobson, to proceeds alleged to belong to Foremost Breeders, Inc. and Cherrywood Realty Corporation and objects to the application of said liens against the proceeds of animals of Leo Jacobson or Foremost Breeders, Inc. on the ground that the extension of said liens is an improper application of the dragnet clauses contained in the chattel mortgages. The same or similar objections are raised by Bertel G. Smith, Administrator, purporting to act on behalf of Foremost Breeders, Inc. The Court finds that there is no objection to the extension of the liens of United Home Bank, American National Bank, and Mike Sherman to Leo Jacobson's interest in the proceeds held by the Receiver in Civil No. 5–1324.

12. It appears from the record that Leo Jacobson was the sole stockholder and officer of the corporation originally known as Cherrywood Realty Corporation which later became Foremost Breeders, Inc. It is also clear that Leo Jacobson and his corporation, Foremost

Breeders, Inc., at all times material, gave no recognition to the distinction between the individual and the corporation but completely disregarded same to the prejudice of the rights of said lienholders, not only with respect to the corporate and individual identities but with respect to the sale, transfer and other disposition of mortgaged animals. Bertel G. Smith, Administrator, and Foremost Breeders, Inc. are estopped by reason of such conduct from now raising technical distinctions as to corporate entity or animal identification. To recognize the corporate entity at this stage in the proceedings would be to sanction its use as an instrument of fraud by Leo Jacobson and by the corporation. The equities are with the lienholders and against the objectors.

13. Under the evidence, it appears conclusively that the objections of Bertel G. Smith, Administrator of the Estate of Leo Jacobson, deceased, in the estate's behalf and on behalf of Foremost Breeders, Inc. are without merit and should be denied; that United Home Bank, American National Bank and Mike Sherman, under the express terms of their mortgage instruments, their status as attaching creditors and under equitable doctrines are entitled to the liens heretofore granted in the Order of this Court of May 5, 1966, and as provided in the Receiver's Report for Distribution in this cause.

14. It further appears to the Court that the objection of Bertel G. Smith, Administrator, is largely a claim that too much is credited to the estate of his decedent. Such an objection is totally without merit. In addition, the Court observes that under this record no objections are filed by Foremost Breeders, Inc. Bertel G. Smith, Administrator of the Estate of Leo Jacobson, has not shown himself to be entitled to urge objections for or on behalf of said corporation. For these additional reasons, said objections must be denied.

*Objections of Edward R. Boyle (Civil No. 5–1323).*

15. Edward R. Boyle has objected to the Report of the Receiver on the ground that said Report does not recognize his right to an attorney's lien for services rendered to Leo Jacobson and to Martha Jacobson, and requests that this Court allow him fees against said parties and direct the lien of same against the proceeds of his clients to be superior to the liens of United Home Bank, American National Bank and Mike Sherman.

16. With respect to proceeds of Leo Jacobson's cattle, it appears that the services were rendered by Mr. Boyle with full knowledge of the rights and claims of the existing creditors and lienholders. Under Iowa law,[1] an attorney has no lien upon the money of his client which is superior to that of a creditor seeking to subject the same to his debt by these very legal proceedings.

17. Under the law, the attorney's lien attaches to money due his client from the adverse party. In this case, the adverse parties have been successful in asserting their claims to the funds and nothing is payable to Mr. Boyle's client, Leo Jacobson, or his estate. The legal services in question were rendered in an unsuccessful attempt to prevent that result and any lien therefor is inferior to the adverse rights in the property which existed prior to the time said services were rendered.

18. It appears that Edward R. Boyle is entitled to a lien in the amount of $15,090.00, against the proceeds payable to the Leo Jacobson Estate, but such lien is subject and inferior to the prior liens confirmed thereon in favor of United Home Bank, American National Bank and Mike Sherman.

19. With respect to Martha Jacobson, it appears that Edward R. Boyle has rendered legal services in her behalf in value equal to $1,000.00, and that the same constitutes a lien upon the proceeds

1. See, however, Atlee v. Bullard, 123 Iowa 274, 98 N.W. 889; Ward v. Sherbondy, 96 Iowa 477, 65 N.W. 413; Des Moines Gas Co. v. West, 50 Iowa 16; 45 Ia. Law Rev. 147, pages 151–3.

distributable to Martha Jacobson pursuant to the Report of the Receiver. It further appears that the Receiver will distribute monies to Martha Jacobson and to the extent of $1,000.00 said distribution should be made to Edward R. Boyle in satisfaction of his claim for attorney's fees.

*Other matters.*

20. *Wells' offer.* The Court's order of May 5, 1966, and the Receiver's Report in Civil No. 5–1323, made reference to an offer by the Wells corporations to contribute cash to the cattle receivership, upon obtaining consent by all parties to the conditions of said offer. Certain parties having objected thereto, and consent of all parties not having been obtained, the Court approves the withdrawal of this offer and directs that distribution shall be made without reference to same.

21. *Objections and Cross-claims Alleging Individual Ownership in Cattle.* Objections have been filed on behalf of Nathan Sheinman, Arnold H. Arnold, Esther Reifer, Murray Collura, Harold Bearnot, Beatrice Shaw, by Nathan Sheinman, her Trustee, Foremost Breeders, Inc., Martha Jacobson, and Leo Jacobson's Estate alleging individual ownership of certain cattle alleged to have been liquidated by Carvel Hall, Inc., Touraine TV Corporation, Peter TV Corporation, National W. T. I., Inc., Gold Coast TV, Inc., and Wells Quality Breeders (sometimes hereafter referred to as the "Wells Companies") and Everett Gaillard. Further, all of the above objectors request certain actions by the Receiver with respect to Dallas Hawke and James Heller. The Wells Companies, having liquidated cattle claimed by them and having made a full accounting therefor to this Court and having been ordered to hold the proceeds of such liquidations subject to further order of this Court have prayed for a confirmation of their entitlement to the proceeds of their liquidation. At the hearing of March 13, 1967, the cross-claims against the Receiver, United Home Bank and American State Bank were dismissed with prejudice. Leave was requested of the Court to dismiss the balance of the cross-claims, without prejudice. Such permission was denied.

22. The objectors failed to offer any evidence in support of the allegations of said objections as to Carvel Hall, Inc., Touraine TV Corporation, Peter TV Corporation, National W. T. I., Inc., Gold Coast TV, Inc., and Wells Quality Breeders and Everett Gaillard, Dallas Hawke and James Heller, and, therefore, the cross-claims of Nathan Sheinman, Arnold H. Arnold, Esther Reifer, Murray Collura, Harold Bearnot, Beatrice Shaw, by Nathan Sheinman, her Trustee, Foremost Breeders, Inc., Martha Jacobson and the Leo Jacobson Estate against said parties should be dismissed with prejudice. Rule 41(b), Federal Rules of Civil Procedure.

23. Carvel Hall, Inc., Touraine TV Corporation, Peter TV Corporation, National W. T. I., Inc., Gold Coast TV, Inc., and Wells Quality Breeders, offered extensive evidence of their entitlement to the proceeds of certain animals in a hearing before this Court January 5, 1965, et seq., and such evidence was properly re-offered herein. Such evidence establishes entitlement of said companies in and to said funds as against each and every party to this action, including but without limitation, Nathan Sheinman, Arnold H. Arnold, Esther Reifer, Murray Collura, Harold Bearnot, Beatrice Shaw, by Nathan Sheinman, her Trustee, Foremost Breeders, Inc., Martha Jacobson, and the Leo Jacobson Estate.

24. On the face of the objections of Nathan Sheinman and Arnold H. Arnold there appear duplicate claims against more than one party to this action, and the duplicate claims against United Home Bank, American State Bank, and the Receiver were dismissed with prejudice.

25. The objectors have had cross-claims against the Wells companies since their answer was filed herein in 1963, and after the trial had commenced on said issues objectors declined to offer evidence on said cross-claims for the stated reason that said conflicting parties were from the same state, to-wit, New York, and that this Court had no jurisdiction

of the funds sought to be recovered; but the record herein discloses that Carvel Hall, Inc., Touraine TV Corporation, National W. T. I., Inc., and Gold Coast TV, Inc. are Delaware and Maryland corporations licensed to do business in Iowa but not so licensed in New York; and that Peter TV Corporation is a New York corporation licensed to do business in Iowa and Wells Quality Breeders is a partnership of Jay and Arnold Wells, both of whom are New York residents, and that the objectors, with the possible exception of Nathan Sheinman, failed to prove the states of their residence; that an accounting has been made by all the Wells companies and the funds of their liquidations have been held subject to the further orders of this Court.

26. This Court has jurisdiction of these cross-claims by virtue of Rule 13(g), Federal Rules of Civil Procedure and by way of ancillary jurisdiction; and that this Court has jurisdiction of this interpleader action notwithstanding there is not complete diversity between the parties. Cramer v. Phoenix Mutual Life Ins. Co., 91 F.2d 141 (1937 8th Cir.), cert. den. 302 U.S. 739, 58 S.Ct. 141, 82 L.Ed. 571; Georgetown Law Journal Vol. 54, p. 1204.

27. As to any other objections which have not been discussed above, there was insufficient evidence to justify departure from the Receiver's Reports, and such objections should be overruled.

## CONCLUSIONS OF LAW, AND ORDER

1. The objections of Mike Sherman to the Receiver's Report of Proposed Distribution in Civil No. 5–1324 should be, and they hereby are sustained. The objections of Edward R. Boyle should be, and they hereby are sustained to the extent of recognizing a lien in his favor against Leo Jacobson's Estate for $15,090.00, which lien is subject and inferior to the liens set out in the Receiver's Report; and a lien against Martha Jacobson for $1,000.00.

2. All other objections to the Receiver's Reports of Proposed Distribution in Civil Nos. 5–1323 and 5–1324, including all cross-claims, should be, and they hereby are overruled and denied.

3. There being no just reason for any delay, Final Judgment should now be entered, approving said Reports of Proposed Distribution, as modified by Paragraph 1 hereof, and directing distribution in accordance therewith, and in said Judgment the Receiver should be directed immediately to undertake the ministerial acts necessary to implement and carry out distribution.

4. Any unpaid court costs now of record shall be paid by the Receiver prior to distribution. No attorneys' docket fees shall be allowed. Any other items which might be claimed to be taxable costs shall be borne by the party who has paid them.

5. The plaintiffs should be, and they hereby are discharged, and the injunctions heretofore entered in these causes should be and they hereby are dissolved.

## FINAL JUDGMENT

Now on this 6th day of April, 1967, pursuant to the Memorandum and Order re Distribution filed this date, and there being no just reason for any delay, it is hereby ordered, adjudged and decreed:

1. The objections of Mike Sherman to the Receiver's Report of Proposed Distribution in Civil No. 5–1324 are sustained. The Receiver is directed to pay to Mike Sherman, forthwith, the sum of $1,337.75. The objections of Edward R. Boyle are sustained, to the extent of recognizing a lien in his favor against the Leo Jacobson Estate in the sum of $15,090.00, which lien is subject and inferior to the liens set out in the Receiver's Reports; and a lien against Martha Jacobson for $1,000.00.

2. All other objections to the Receiver's Reports of Proposed Distribution in Civil Nos. 5–1323 and 5–1324, including all cross-claims, are overruled and denied.

3. The Receiver's Reports of Proposed Distribution, as modified by Paragraph 1 hereof, are approved, and distribution shall be made in accordance therewith. The Receiver, subject always to the supervision of the Court, is directed

immediately to undertake the ministerial acts necessary to implement and carry out distribution according to this judgment, which acts shall include:

(a) Payment of the sum due Mike Sherman, pursuant to Paragraph 1 hereof;

(b) Collection of the sums due from United Home Bank and American State Bank, per the Report in Civil No. 5–1323;

(c) Extension of the Statistical Report of June 30, 1966, to a current date;

(d) Obtaining any necessary federal and state tax clearances;

(e) Filing and obtaining approval of fees and expenses to date and filing an estimate of future expense;

(f) Making distribution to the investors, or their lien creditors, of the net cash estimated to be remaining, together with all notes, checks and open accounts belonging to investors, in accordance with the Reports of Proposed Distribution. The Receiver shall obtain a receipt from each investor to whom distribution is made; in the case of investors whose share is subject to a lien or liens, the payment shall be made to the lienholder or lienholders to the extent of the lien or liens against such interest, and the receipt of the lienholder or lienholders shall be sufficient acquittance of the Receiver as to the amounts so paid.

(g) Reporting to the Court in the event any distributee refuses to accept his distribution and obtaining an order for payment of same to the Clerk, to be held pending further order of the Court;

(h) Reporting the results of the foregoing, securing a final allowance of fees and expenses, distributing any remaining cash in accordance with the Reports for Distribution approved herein, and applying for an order discharging the Receiver and exonerating the surety on his bond;

(i) Any other acts incidental to and necessary to carry out the provisions of this judgment.

4. Any unpaid court costs now of record shall be paid by the Receiver prior to distribution. No attorneys' docket fees shall be allowed. Any other items which might be claimed to be taxable costs shall be borne by the party who has paid them.

5. The plaintiffs are hereby discharged, and the injunctions heretofore entered in these causes are hereby dissolved.