Joseph **PURDES** and Angeline C. Purdes, Plaintiffs,

Alice Iverson, Intervenor-Plaintiff,

v.

**CARVEL HALL, INC.**; Gold Coast, Inc.; National WTI Inc.; Peter TV Inc.; Touraine Corporation and Wells Quality Breeders, Defendants,

and

Chavet Farm Management & Sales Co., Added Defendant.

Civ. 7-1991-C-1.

United States District Court
S. D. Iowa,
Central Division.

July 9, 1969.

John H. Neiman, Des Moines, Iowa, Edward R. Boyle, Clear Lake, Iowa, and L. L. Boomhower, Mason City, Iowa, for Joseph Purdes and Angeline C. Purdes.

David J. Butler, Mason City, Iowa, for Alice Iverson.

Donald A. Wine, Des Moines, Iowa, for defendants and the "added defendant".

## MEMORANDUM AND ORDER

HANSON, District Judge.

The birds still continue to circle and hover over the slick shining white bones of a stillborn calf. This writer once thought he had laid this matter to rest and though it may be a waning hope, he still does. Even the present action is a continuation of the disputes between various claimants to livestock, and particularly cattle, formerly managed by Fashion Farm, Inc., an Iowa corporation, with its principal place of business at Merservey, Iowa. This Court has previously related many of the facts and circumstances in connection with various orders entered in the interpleader action, Cattle Owners Corporation v. Arkin, et al, D.C., 252 F.Supp. 34 (1966), 267 F. Supp. 658 (1967).

Careful review of the previous oral arguments made in this cause and careful examination having been paid to the previous record in this cause discloses but one result and that result is that the motion herein referred to must be sustained. The immediate problem has been carefully briefed, carefully analyzed and authoritatively supported. The defendants have submitted to this Court matters which they contend the facts to be and also matters relating to the law gov-

erning said controversy. The Court is unalterably persuaded by the reasoning of the defendants in this cause · and adopts the position of the defendants and totally rejects the position of the plaintiffs in this cause.

Plaintiffs here are former parties to the interpleader action claiming to represent a class which consists of substantially all of the parties to the prior action against what has been called the "Wells interests" (Carvel Hall, Inc., Gold Coast, Inc., National WTI Inc., Peter TV Inc., Touraine Corporation, Jay Wells and Wells Quality Breeders) for conversion of cattle. The cattle alleged to have been converted by Wells interests are those which were accounted for by Wells in the interpleader action. The complaint acknowledges its relationship to the prior action by direct reference in paragraph 18 as follows:

> "That plaintiffs have previously been stopped from bringing this action at an earlier date because of an injunction issued by the United States District Court for the Southern District of Iowa, on November 23, 1962, in the case entitled Cattle Owners Corp. et al, Plaintiffs, v. David Arkin, et al, Defendants.

Defendants have filed a motion for summary judgment based primarily on the issue of res judicata by reason of the prior action, thus properly raising the issue as to whether the adjudications in the interpleader action preclude the present action.[1] In the course of this memorandum opinion the Court will use the terms "claim preclusion" for res judicata and "issue preclusion" for collateral estoppel as used by the Eighth Circuit Court of Appeals in recent cases.[2]

After the original motion for summary judgment was filed raising the issue of res judicata, plaintiffs amended their complaint and added Chavet Farm Management & Sales Co. as a defendant. A new motion for summary judgment was filed on behalf of Chavet accompanied by proper affidavits stating that Chavet was acting as an agent for the Wells interests. This fact has not been challenged by plaintiffs and appears to be without dispute in this record. Preclusion is available to those in privity with a party who has litigated an issue with an adverse party. Towle v. Boeing Airplane Co., 364 F.2d 590 (8th Cir. 1966); Spector v. El Rancho, Inc., 263 F.2d 143 (9th Cir. 1959); Mooney v. Central Motor Lines, 222 F.2d 572 (6th Cir. 1955); see discussion Vestal, Preclusion/Res Judicata Variables, 50 Iowa Law Review 27 at 43 et seq. The Court concludes that the addition of Chavet as an additional party therefore does not prevent the application of res judicata.

Another preliminary matter which is before the Court is the question of whether or not this action is properly maintained as a class action. Rule 23 provides that the Court shall determine this issue "[a]s soon as practicable after the commencement of an action" and that such an order "may be conditional, and may be altered or amended before the decision on the merits." Thus it may be said that new Rule 23 contemplates the determination of the class prior to a final determination.

This Court has already determined by an order filed on August 28, 1968, that claims of the named plaintiffs must be in excess of $10,000 because the claims may not be aggregated. This Court held that the claims of the plain-

---

1. Smith v. United States, 369 F.2d 49, 53 (8th Cir. 1966).

2. Towle v. Boeing Airplane Co., 364 F.2d 590 (8th Cir. 1966); and Engelhardt v. Bell & Howell Co., 327 F.2d 30 (8th Cir. 1964). See also a series of articles on the general subject matter by Professor Allan D. Vestal: The Constitution and Preclusion/Res Judicata, 62 Mich. Law Review 33 (1963); Res Judicata/Preclusion Variables, 50 Iowa Law Review 27 (1964); Rationale of Preclusion, 9 St. Louis U.L.J. 29 (1964); Preclusion/Res Judicata Variables: Nature of the Controversy, Wash.Law Q. 158, at 180 et. seq. (1965); Extent of Claim Preclusion, 54 Iowa Law Review 1 (1968).

tiffs were separate and distinct from those of the members of the class purported to be represented. In view of the fact that no notice has been given to members of the alleged class, as provided for in Rule 23, and in view of the fact that this ruling would not be binding on members of the class not so notified, the Court now holds that for the purposes of this memorandum the case is not maintainable as a class action. There are very serious factual problems in treating this case as a class action. Each member of the class claims title to certain individual animals. The animals were not located in any central location. While it is alleged that the Wells interests converted animals belonging to various members of the class, the proof would necessarily involve the presentation of evidence by each member as to the identity, location and title of his animals, and such evidence as he has that the Wells interests converted the animals so identified. In such circumstances, it is doubtful that the question of fact or law common to the members of the class predominate.

Having disposed of the preliminary matters, the Court now considers the central issue presented by the motion for summary judgment: Are these plaintiffs precluded from maintaining this new action by the adjudication in the interpleader case? To determine this issue, it will be necessary to analyze the nature of the interpleader action, to ascertain what issues were litigated, and to dissect the relationship of the parties in that action.

Cattle Owners Corporation was an Iowa corporation formed to liquidate the livestock formerly managed by Fashion Farm, Inc., 252 F.Supp. 34, 38. When difficulty arose between various claimants to proceeds of the liquidation, the corporation filed a petition in federal court on November 23, 1962. The petition was in interpleader and defined the fund to consist of the cash liquidated from the sale of animals formerly managed by Fashion Farm, Inc., *and* the animals formerly managed by Fashion Farm, Inc. The prayer for relief demanded "That this Court finally determine the merits of any and all claims asserted by or against any investors to the funds or property coming into the hands of said receiver, and that a final decree be entered by this Court determining such rights of such investors and *of any and all* persons or firms claiming liens or other rights in the property. * * *" (Emphasis added)

The Court entered an order appointing a receiver and granting an injunction on November 23, 1962, and the Court's order states:

"(2) That the plaintiffs and defendants, each party to this proceeding, be and they hereby are enjoined and restrained from instituting or prosecuting in any state court or any United States Court, any suit or proceeding on account of or pertaining to the property and money which is the subject matter of the controversy presented by said Petition, * * *.

"(3) That Don O. Jones of Des Moines, Polk County, Iowa, be and he is hereby appointed receiver of the funds and property formerly in the custody and control of plaintiff Cattle Owners Corporation and *also of the property of the investors named herein which has not been officially in the hands of said Cattle Owners Corporation, but which has of necessity been under its supervision and control.* (Emphasis added)

"(5) (a) *'Take into his exclusive possession and control all of the property, assets and funds of plaintiff Herman Jervis and all of the defendant investors which were formerly being managed by said investors by Fashion Farm, Inc., wherever located, and whether or not such property, assets and funds were or were not in the custody and under the supervision and control of plaintiff Cattle Owners Corporation.* (Emphasis added)

"(6) *That the receiver shall supervise and administer the care and liquidation of the livestock belonging to the*

*investors named herein and formerly managed for them by Fashion Farm, Inc., whether or not previously within the official custody of Cattle Owners Corporation in an orderly and efficient manner until further order of this Court, and to that end, without limiting the generality of the foregoing, to: \* \* \*."* (Emphasis added)

The above recitation from the initial pleadings and preliminary order in the interpleader action makes it very clear that the nature of the action was (1) an umbrella providing all of the claimants (nominated co-defendants) an opportunity to contest *in that action only* their entitlement to proceeds of the sale of animals managed by Fashion Farm, Inc., and (2) that the Court asserted jurisdiction beyond the monies and animals possessed by plaintiff Cattle Owners Corporation to include all animals formerly managed by Fashion Farm, Inc. These factors are central in the determination of the issue of res judicata in this case because it identifies the relationship of the parties in the prior action and the matters in litigation.

■■ A discussion is in order as to the relationship between the parties. Issue preclusion traditionally applies when an issue has been previously litigated between adverse parties. Vestal, Preclusion/Res Judicata Variables, 50 Iowa Law Review 27, 29 (1964). It is readily apparent that the stakeholder plaintiff is not adverse to the defendants in the traditional sense. In fact, the plaintiff states that there is more than one claimant *and that their claims are adverse* and that the stakeholder will deposit the stake in court so that he will be protected from multiple litigation. An ordinary prerequisite of interpleader is that the stakeholder-plaintiff acknowledge his own lack of entitlement to the stake. But the very essence of the action is that the various adverse claimants be made co-defendants. Consequently, in interpleader the co-defendant claimants to the *res* or *fund* in court are, by definition and analysis, adverse.

From the above analysis it is clear that the plaintiffs Purdes, and the intervenor Iverson, having been claimants in the interpleader action, were in a position adverse to the various Wells interests, which were likewise claimants in the interpleader case. And this is so despite their formal designation as co-defendants.

■ At this point it is necessary to discuss whether the Court is relying on claim preclusion or issue preclusion in this determination. Claim preclusion forecloses the possibility of recovery regardless of new or additional facts or issues which may be asserted. On the other hand, issue preclusion applies only to those things presented to the Court or which are essential to the case. The most scholarly, articulate and authoritative approach to the problems of claim preclusion and issue preclusion as related to res judicata of which this Court is acquainted are contained within certain articles of the Iowa Law Review authored by Professor Vestal and herein cited.

■ As previously stated, the Court is not deciding this case as a class action, but in the event the class action had been allowed, the claims of Nathan Sheinman, Arnold H. Arnold, Esther Reifer, Murray Collura, Harold Bearnot, Beatrice Shaw by Nathan Sheinman, her trustee, Foremost Breeders, Inc., Martha Jacobson and Leo Jacobson Estate would be barred by claim preclusion. This is so because these parties specifically filed crossclaims against the Wells interests in the interpleader action. These cross-claims (later denominated objections) came on for hearing on March 13, 1967, and were dismissed with prejudice by virtue of Rule 41(b), Federal Rules of Civil Procedure. 267 F.Supp. 648 at 665 (1967). This precludes any further litigation between those claimants and the Wells interests on the same claim.

However, this Court is of the opinion that as to the specific plaintiffs in this case, Joseph and Angeline C. Purdes, who were parties to the interpleader action by virtue of the trust which they

created as the Purdes Trust, and as to Alice Iverson, the intervenor, neither of whom filed specific cross-claims against the Wells interests, preclusion only applies in the event the issue presented in this case was previously determined in the interpleader action, and was essential to the case. The Court therefore proceeds to its determination of the issues actually decided in the prior case.

As previously stated, plaintiff Cattle Owners Corporation asked · for a determination of the entitlement of all defendants (claimants) to the proceeds of the sale of all animals "formerly managed by Fashion Farm, Inc." The preliminary court order granted this broad jurisdiction, but the matter did not rest there. Numerous defendants, including the Wells interests, strenuously contested the Court's asserted jurisdiction beyond the property tendered to it by the Cattle Owners Corporation. Extensive briefs were submitted by all parties, and the Receiver's attorney argued that the Court should extend its jurisdiction to include all animals formerly managed by Fashion Farm, Inc., to prevent "utter chaos." Some of that language is pertinent here:

> "Literally thousands of animals both liquidated and unliquidated are involved. To leave the determination of the ownership of these animals to the prosecution of independent rival claims, not only of owners but of lienholders, would be completely unworkable, vexatious and expensive beyond permissible limits. It would result not only in multiplicity of litigation but in multiple liability as to any one animal, in view of the possibility that courts in various states might reach completely opposite conclusions as to the ownership of particular animals."

Judge Stephenson entered an order on January 14, 1963 deciding the issue of jurisdiction and overruling all motions based on want of jurisdiction and setting forth the extent of the issues to be determined in the interpleader in the following language:

> "3. *That in order to prevent utter chaos, waste and dissipation of assets, multiple litigation, and conflicting claims of ownership, it is necessary that the Court-appointed receiver take charge of all of the records and property formerly managed by Fashion Farm, Inc., except funds, property and cattle now in the actual or constructive possession or control of any defendant, which shall be dealt with as hereinafter provided.* (Emphasis added).

> "5. That all funds and property now in the actual or constructive possession or control of any defendant (hereinafter referred to as "possessing defendant") representing the proceeds of the sale or liquidation of any cattle formerly managed by Fashion Farm, Inc., and any of such cattle now in the actual or constructive possession or control of any such possessing defendant, may be retained by such possessing defendant pending further adjudication and order herein as hereinafter set forth; provided, however, that any such possessing defendant shall render a full and complete accounting for such of same as does not represent the sale or liquidation of cattle by Fashion Farm, Inc., for or on behalf of such possessing defendant, which such accounting shall be made to the receiver herein within thirty days following entry of this order, unless additional time shall be granted by the Court. Following the receipt of said accounting said receiver shall determine the portion, if any, of such funds, property and cattle, as to which there is, in his opinion, no reasonably justiciable conflicting claim, and as pertains thereto, he shall file an application with the Court for abandonment of any claim thereto, which application, after notice and hearing, shall thereafter be approved or disapproved by this Court as the circumstances may warrant. *As to that portion of such funds, property and cattle as to which, in the receiver's opinion, there exist reasonably justiciable conflicting claims, the receiver or any other non-possessing party authorized by the Court, may file in*

*this action a pleading alleging which other non-possessing party, in his opinion, is legally entitled to such funds, property or cattle, or any portion thereof, and praying for an adjudication based on such allegations in favor of such other non-possessing party and against any such possessing defendant, which pleading shall be appropriately answered by such possessing defendant.* The Rules of Civil Procedure, to the extent they are not in conflict herewith, shall be applicable to all such claims against any such possessing defendant, *and all such claims shall be tried to this Court unless otherwise directed by this Court, with the receiver or other non-possessing party bearing the burden of proving the allegations of such pleadings and claims, in accordance with the appropriate rules of law governing same. This Court shall thereafter render an appropriate adjudication thereon in this action.* (Emphasis added)

The above order remained in full force and effect throughout the interpleader action. In an order dated February 25, 1966, this Court refers to this ruling of Judge Stephenson with the following language:

"It appears to this court that the order * * * made on the 14th day of January, 1963, in cause No. 5–1323 ultimately adjudicated (it) to be interpleader action(s) * * *. In any event, for the purposes of this decision, the court deems (it) to be the law of the case." 252 F.Supp. 34, 39 (1966).

This Court further acknowledged the extent of the jurisdiction of the interpleader action in its final order dated April 6, 1967, as reported in 267 F.Supp. 658 (1967). While the Court was fully aware of the fact that the Wells interests had liquidated their own cattle, it was also aware of the fact that Wells had filed, under court order, an extensive accounting of such liquidations and had held such funds pursuant to order of court for some four years. The Wells interests had fully participated in all phases of the Receivership proceedings,

including the five-week "plenary" hearing before this Court commencing January 25, 1965. The Wells interests had offered extensive documentary evidence and detailed testimony relating to the manner in which its records had been maintained. Detailed briefs were filed and a request was made of this Court to determine the entitlement of the Wells Interests vis-a-vis the various co-defendant claimants in the interpleader action to the proceeds of the liquidation of its animals. The Court's order of April 6, 1967, was entered as follows:

"23. Carvel Hall, Inc., Touraine TV Corporation, Peter TV Corporation, National W.T.I., Inc., Gold Coast TV, Inc., and Wells Quality Breeders, offered extensive evidence of their entitlement to the proceeds of certain animals in a hearing before this Court January 5, 1965, et seq., and such evidence was properly re-offered herein. *Such evidence establishes entitlement of said companies in and to said funds as against each and every party to this action, including but without limitation, Nathan Sheinman, Arnold H. Arnold, Esther Reifer, Murray Collura, Harold Bearnot, Beatrice Shaw, by Nathan Sheinman, her trustee, Foremost Breeders, Inc., Martha Jacobson, and the Leo Jacobson Estate.* 267 F.Supp. 665. (Emphasis added)

In answer to the inquiry as to whether the issue of the entitlement of the Wells interest was determined vis-a-vis the other claimants to the interpleader, including the plaintiffs, Joseph and Angeline Purdes, and the intervenor, Alice Iverson, the Court would have to answer affirmatively for primarily two reasons: (1) The nature of interpleader is to determine the entitlement of various claimants to the fund in court, and the fund determined to be in court in the interpleader action included the proceeds of the animals liquidated by the Wells interests, and (2) This Court specifically entered an order on the entitlement of the Wells companies to proceeds of their liquidations as against all other claimants.

■ Plaintiffs' Brief urges that this Court had no jurisdiction beyond the actual funds in the hands of the Receiver in the interpleader action. As previously stated, this position was fully litigated in the interpleader action and an appeal to the United States Court of Appeals, Eighth Circuit, was filed in which that issue was raised by way of appeal. However, that appeal was dismissed thus disposing of this issue. The issue of jurisdiction, once actually litigated, may be barred by the doctrine of issue preclusion. See Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); Vestal, Preclusion/Res Judicata Variables; Nature of the Controversy, Wash. Law Q. 158, at 180 et seq. (1965).

In Smith v. United States, 369 F.2d 49 (8th Cir. 1966), cert. den. 386 U.S. 1010, 87 S.Ct. 1355, 18 L.Ed.2d 439, the Eighth Circuit was confronted with a situation somewhat similar to the case at bar. Smith had become a party defendant to an action brought by the United States on a bond when the bonding company alleged, by way of defense, that there were other claimants to the bond, and was permitted to interplead Smith, one of the claimants. After final determination of the issues in that proceeding, Smith brought an action against the United States, and the United States filed a summary judgment based on res judicata. The Court first affirmed summary judgment as a means of raising the issue of res judicata. 369 F.2d 49 at 53 (1966).

■ Further, the Eighth Circuit stated in *Smith* that there are four requirements which the court must examine in order to preclude an issue: (1) The issue concluded must be the same, (2) The issue must have been raised and litigated in the prior action, (3) The issue must have been material and relevant to the disposition of the prior action and, (4) The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment. (Citing Moore's Federal Practice and Procedure, Vol. 1B, Section 0.443, p. 3901.) Testing the present case against these requirements, it is concluded as follows: The discussion of the issues raised and the determination of them in the interpleader action is clearly revealed by the previous discussion. The determination of entitlement to the funds constituting the res of the interpleader action *is the only* issue in that action and is therefore not only material but essential to a determination of an interpleader action. Thus this Court concludes that this action is barred by res judicata/preclusion.

A doctrine which may be applied to the factual situation presented by this case has been labeled by the Supreme Court of Iowa the muniment of title doctrine. Bennett v. Monticello State Bank, 226 Iowa 705, 285 N.W. 266 (1939). This litigation involved certain funds, the ownership of which was in controversy. In Suit I the father sued the bank and his son and established his entitlement to the funds. In Suit II the son sued the bank and claimed the funds, and claimed that res judicata did not apply since he and the bank had been co-defendants in the prior litigation. While the Iowa court avoided the use of res judicata, it reached the same result by this reasoning:

"We think the muniment of title doctrine controls the case at bar. The judgment in the former suit established in the father the title and ownership of the funds in controversy and adjudicated that appellant had no ownership or title thereto. Applying the principles of that doctrine, we, therefore, hold appellant is barred from maintaining this action based upon the same alleged title as the deposits in question. Having once tried his case upon the merits he may not properly relitigate it, since the former judgment constitutes a muniment or proof that he had no ownership in nor title to the property in controversy but that the same belong to his father." 226 Iowa 705 at 711, 285 N.W. 266 at 268–269.

Professor Vestal defines this doctrine as follows:

"When ownership of property has been litigated between individuals and the title has been adjudicated in one of the parties, it seems to be completely reasonable to say that the losing party cannot relitigate the matter * * * with those who rely upon the title of the winning party." Vestal, Preclusion/Res Judicata Variables, 50 Iowa Law Review 27 at 64 (1964).

It is readily apparent that the facts of this case, while somewhat more complex, come directly within the rule of muniment of title. It might be said that Smith v. United States, *supra* and Bennett v. Monticello State Bank, *supra* are similar cases each with a different rationale.

But basically all of the cases in which the court ultimately decides that a party should be precluded from relitigating an issue are based on firm public policy. The judgment of a court should actually finalize the dispute between the litigants, and any other result is inefficient and wasteful. This Court is particularly mindful of the tremendous effort which went into the determination of issues in the interpleader action. The documentary evidence in the hands of the Receiver required rented space, and each litigant was required to maintain his own court exhibits. One phase of the hearing related to the Receiver's turnover recommendation extended over five weeks and the transcript covered twenty volumes. 252 F.Supp. 34, 41 (1966).

The only issue to be decided by the interpleader action was the entitlement of the various claimants to the funds in court. It would be supreme irony at this juncture for this Court to hold that the interpleader action did not decide this issue completely in view of the time and effort involved in those proceedings. This Court's opening remarks in its order on distribution are significant:

"The major premise that 'all things must end' has appropriate application in these proceedings." 267 F.Supp. 658 at 659 (1967).

The Court is compelled under the record in this case to find and does find that the issues here raised have been previously raised. It has been succinctly stated in Clarke v. Redeker, 406 F.2d 883 at 885:

"To the extent, if any, that these issues were not decided in the first Clarke case, they are matters that might have, and should have been there determined. 'The law of res judicata as it relates to claim preclusion is firmly established. In a subsequent action by the same parties, a judgment on the merits in a former action based upon the same cause of action precludes relief on the grounds of res judicata. The judgment is conclusive, not only as to matters which were decided, but also as to all matters which might have been decided. Tait v. Western Md. Ry. Co., 289 U.S. 620, 623, 53 S.Ct. 706, 77 L.Ed. 1405; Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069; Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195; Guettel v. United States, 8 Cir., 95 F.2d 229, 230, 118 A.L.R. 1060.' Englehardt (Engelhardt) v. Bell & Howell Co., 327 F.2d 30 (8th Cir. 1964).

"Inasmuch as the Court finds that the plaintiff is here suing on the same cause of action as was adjudicated in Clarke v. Redeker, 259 F.Supp. 117 (S.D.Iowa 1966), this action should be dismissed as precluded on the grounds of res judicata."

In view of the Court's holding that this action is barred by issue preclusion, it is not necessary to make a final ruling on the defendants' motions to dismiss as to the named plaintiffs and the intervenor on the grounds that in neither case is there the requisite jurisdictional amount in dispute. Defendants have attached evidentiary affidavits to these motions to dismiss stating facts which, if true, would warrant the Court in finding that it lacks jurisdiction over this cause.

In a memorandum filed August 28, 1968, this Court ruled that the claims of

the named plaintiffs were separate and distinct from others in the alleged class and that jurisdictional amount had to be shown as to each claim. The Court noted the split in the circuits relative to this issue but noted that the Eighth Circuit in Snyder v. Harris, 390 F.2d 204, 205 (8th Cir. 1968) had concluded that where claims were distinct, claims in a class action may not be aggregated to reach jurisdictional amount. The Court notes that this split in the circuits has been recently resolved by the Supreme Court's affirmance of the Eighth Circuit in Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319. The Supreme Court makes it clear that new Rule 23 did not change the requirement that separate and distinct claims could not be aggregated to reach jurisdictional amounts.

But *Snyder* involved a fact situation in which plaintiff specifically pleaded only $8740 damages for herself but alleged she represented 4000 members of the class with similar claims. Here, plaintiffs and intervenor each allege amounts sufficient to meet the jurisdictional requirements, but defendants have filed affidavits stating facts which would permit the Court to rule that the requisite jurisdictional amount has not been established. The plaintiffs and intervenor have elected not to file counter-affidavits on the jurisdictional issue. However, there is some question as to whether summary judgment procedures should be employed to determine jurisdictional requisites and in view of the Court's holding on the res judicata issue, this matter will be passed for the present. In this connection, the Court notes that the defendants filed interrogatories of the plaintiffs and intervenor in January of 1969, and although no extensions have been brought to the attention of the Court, answers have not as yet been made. The interrogatories are apparently addressed to the issue of jurisdictional amount and the failure of plaintiffs and intervenor to answer may indicate a serious problem developing on this issue. In any event, the Court would want an evidentiary hearing before disposing of the cause on the basis of want of jurisdictional amount and therefore makes no ruling at the present time on this issue.

## ORDER

NOW, on this 8th day of July, 1969, the Court having filed its Memorandum in this matter, and there being no just reason for delay, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

That defendants' motions for summary judgment be, and they are hereby, sustained, and that the case be, and is hereby, dismissed at plaintiffs' costs.